## Biles et al., Appellants, v. Biles.

*Wills—Construction—Intention.*

1. It is not the province of the court to consider what the testator possibly intended, but only what intention is expressed in the language used.

2. Where a testator at the beginning of his will uses the words "being desirous to settle my worldly affairs......do make this my last will," a construction should be adopted that will avoid intestacy unless it does violence to the language of the will.

3. A partial intestacy is not to be presumed, and particularly is this so where the evident intent of the maker is to dispose of his whole estate.

4. In construing a will as a whole, each clause must be coupled with its general scheme in aid of discovering the true intention of the testator.

*Wills—Construction—Remainders—Vested and contingent estate—Presumption—Obscurely worded will.*

5. Remainders are presumed to be vested rather than contingent.

6. Under the peculiar and obscure wording of the will in this case, a remainder for a son was held to be vested and not contingent.

7. In wills obscurely expressed, the court may transpose a word or a sentence in order to effectuate the testamentary purpose, the order in which the words are placed being immaterial if a different arrangement will best answer the apparent intent of the testator.

Argued October 7, 1924. Appeal, No. 45, Oct. T., 1924, by plaintiffs, from judgment of C. P. Washington Co., Aug. T., 1923, No. 39, for defendant on demurrer to statement of claim, in case of Edward M. Biles and Grover C. Biles v. Louis Hays Biles. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Ejectment for lots in Allen Township.

Demurrer to statement of claim. Before BROWNSON, P. J.

The opinion of the Supreme Court states the facts.

The will of Allen M. Biles was as follows:

"I, Allen M. Biles of Allenport Allentownship Washington County State of Pennsylvania being of sound deposing mind and memory—considering the uncertainty of life and being desirous to settle my worldly affairs while I have strength and capacity do make this my last will and testament

"First (1) I bequeath to my beloved Wife Caroline S. Biles the use and enjoyment during her life or widowhood my house and three (3) lots No. 7-8-9 situated on north side of Allen Street West of P. V. and C. R. R. north by Residence of C. N. Furnier East by Water Street in the Villeage of Allenport County of Washington state of Pennsylvania and all house hold Goods furniture and utensils belonging to me at the time of my death (Excepts) such articles bequeathed to my son Louis Hays Biles—(should) my wife Caroline S. Biles remarry then I bequeath that her—(rights) of holding the said house and Lots above mensioned at once cease and Louis Hayes Biles is to have all of the (right) title and interest of said property but should they Jointly have a chance to sell the said property to a good advantage during said widowhood I recommend that the money Received be Invested in good real estate

"(Second) 2nd I bequeath to my son Louis Hays Biles my Piano my violin my Book case and chair and all

books and Tools thair in belonging to me and all other Tools belonging to me and my Calinder Clock and the Old 8 Day Mantle clock— 3rd to Edward M. Biles my Oldest son I bequeath One Dollar $1.00 to be paid one year after my deceased

"Fourth (4) to Grover Cleveland Biles my second son I bequeath One Dollar $1.00 to be paid one year after my deceased

"Fifth (5) I nominate and appoint Caroline S. Biles my Wife and Louis Hays Biles my son my Executors without filing bond and full power to make Deed for the sed Real Estate— In Witness whercof I place my hand and (seal) this 19 day of October A D. 1905.

"Allen M. Biles (seel)"

Demurrer sustained.   Plaintiff appealed.

*Error assigned* was judgment, quoting it.

*David M. McCloskey,* for appellants, cited: Joyce's Est., 273 Pa. 404; DeSilver's Est., 142 Pa. 74; Hancock's App., 112 Pa. 532; Adams v. Johnson, 227 Pa. 454; Bender v. Bender, 226 Pa. 607.

*H. W. Hughes,* of *Hughes & Hughes,* with him *Roy I. Carson,* for appellee.—In obscurely expressed wills, the court may transpose a word or sentence in order to effectuate testator's purpose, the order in which the words are placed being immaterial if a different arrangement will best answer testator's apparent intention: Roberjot v. Mazurie, 14 S. & R. 42; Ferry's App., 102 Pa. 207; Eckert v. Trust Co., 212 Pa. 372; Worst v. DeHaven, 262 Pa. 39.

OPINION BY MR. JUSTICE KEPHART, November 24, 1924:

The entire will of Allen M. Biles will be found in the reporter's notes.   The part we are here asked to construe is as follows: "I, Allen M. Biles......being desirous to settle my worldly affairs......do make this my last

will and testament......I bequeath to my beloved Wife Caroline S. Biles the use and enjoyment during her life or widowhood my house and three (3) lots...... (Should) my wife Caroline S. Biles remarry then I bequeath that her—(rights) of holding the said house and Lots above mensioned at once cease and Louis Hayes Biles is to have all of the (right) title and interest of said property but should they Jointly have a chance to sell the said property to a good advantage during said widowhood I recommend that the money Received be Invested in good real estate......To Edward M. Biles my Oldest son I bequeath One Dollars $1.00 to be paid one year after my deceased......to Grover Cleveland Biles my second son I bequeath One Dollar $1.00 to be paid one year after my deceased." It is urged by appellants that Louis had a contingent estate, the contingency being the remarriage of the widow, and as this did not take place, on the widow's death the estate passed under the intestate laws. The court below held a contrary view, and decided that Louis had a vested remainder in fee.

In the interpretation of wills, as stated in Joyce's Est., 273 Pa. 404, 407, "it must be steadily borne in mind that it is not the province of the court to consider what the testator possibly intended, but only what intention is expressed in the language used,......a necessary conclusion, since a will is required to be in writing." Applying this principle to the will before us a casual observation will convince that it is not free from difficulty. Its meaning is, to say the least, obscure and hazy.

As supporting the conclusion of the court below that Louis had a fee, we start with the proposition that testator intended to make a complete disposition of his property by the use of the words "being desirous to settle my worldly affairs......do make this my last will and testament." In order to effectuate this intention, a construction should be adopted that would avoid intestacy unless it does violence to the language of the will. A

partial intestacy is not to be presumed, and particularly is this so where the evident intent of the maker is to dispose of his whole estate: Ostrom v. Datz, 274 Pa. 375, 378; Moyer's Est., 280 Pa. 131, 134. Then again, remainders are presumed to be vested rather than contingent. The will being construed as a whole, each clause must be coupled with its general scheme in aid of discovering the true intention of the testator. There is an evident purpose here to favor Louis; this appears in the second item, where he is given his personal effects, such as his piano, violin, bookcase, chair, books and other articles. There is nothing to show motive, reason or desire to predicate an estate, such as urged by appellants, while there is much that indicates a vested remainder in Louis. Plaintiffs, Edward and Grover, the other sons and only persons who would take with him if there was an intestacy, are given specific bequests,—one dollar to each. In an old-fashioned way of thinking,—still good,—they were cut off with a dollar. Testator, having in mind the disposition of his whole estate, and, particularly speaking, of this very property, felt certain that, by the devise here mentioned, he parted with all his property; and because Louis was a cripple (this statement is unchallenged in the briefs) he also limited the amount the other two children were to receive. But, whatever may have been the motive, the language is persuasive that testator intended they should have no greater interest.

In the gift to his wife, he is anxious that no stranger should partake of his life work. He was uncertain of the words necessary to accomplish this purpose or their effect, and this is the part causing the confusion. Cut them from the will and there is no doubt as to the estate in Louis. This, of course, we cannot do. But testator most certainly thought he had given Louis an estate in the land. This is shown by the manner of the gift to him. He says that Louis "is to have all of the (right) title and interest of said property." Why did

testator use the word "all" if he did not believe Louis
had a then present interest in the remainder, following
the "use and enjoyment during her [the widow's] life
or widowhood?" This thought is further evidenced in
the paragraph where the father's idea of joint interest
in both the widow and the son is considered. He directs,
"should they Jointly have a chance to sell." Why the
necessity of Louis' joining in case the widow had not
married, if not for the protection of the gift to him?
This joinder of interest is not by way of an executorship,
but appears in the dispositive clause of the will.

We agree with the court below that the word "and"
appearing before the gift might in a sense derogate from
the conclusion thus far reached, but, as we have stated,
the thing which confused the testator was the choice of
language necessary to assure him that in case of re-
marriage a stranger should not enjoy the use of the land.
The word appears in this connection: The will states,
"should my wife......remarry then......her (rights)
of holding the said house......[shall] at once cease,
and Louis......is to have," etc. The court below, in
construing the word "and" says: "In the interpretation
of this obscurely worded will we obtain little or no help
from punctuation, etc. It is almost destitute of commas
and periods (except, in the case of the latter, after in-
itials of proper names). Testator's favorite punctuation
marks consist of parentheses, and these he uses capri-
ciously and in at least half of the instances inappropri-
ately. His use of capital letters is also capricious; he
inappropriately capitalizes the initial letter of a verb
or a common noun in the middle of a sentence, and in at
least one instance he begins a new sentence with a small
letter. Suppose there had been a period after the word
'cease,' and the next word 'and,' had commenced with a
capital letter: the force of the plaintiffs' argument would
have been considerably weakened. But the absence of
punctuation there, and the beginning of the 'and' with
a small letter, have no unequivocal or strong significance

in the case of a will written by a testator who did not know how to make appropriate use of punctuation and capitalization."

Having in mind these facts, that testator intended to dispose of his entire estate, and he made specific bequests to his two sons, evidently limiting the property they were to receive, that he placed the widow and her son Louis in joint control of the property without regard to remarriage, and that both sides agree he intended to favor Louis, these, with the legal presumptions first mentioned, constrain us to agree with the court below,— following the opinion of Mr. Justice SIMPSON in Worst v. DeHaven, 262 Pa. 39, 42, "In wills obscurely expressed the court may transpose a word or a sentence in order to effectuate the testamentary purpose, the order in which the words are placed being immaterial if a different arrangement will best answer the apparent intent of the testator,"—that the will can be reworded to carry out the intention of the testator, as follows: "I bequeath to my beloved Wife......the use and enjoyment during her life or widowhood......and Louis Hays Biles is to have all of the (right) title and interest of said property but should they Jointly have a chance to sell the said property to a good advantage during said widowhood I recommend that the money Received be Invested in good real estate (should) my wife......remarry then I bequeath that her (rights) of holding the said lots above mentioned at once cease." No words are thus deleted and testator's intention preserved.

The decree of the court below is affirmed.