Kish, Appellant, *v.* Bakaysa et al.

534

Argued April 12, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Francis Johns Gafford,* with him *Smith & Paff* and *Daniel McCarthy,* for appellant.

*R. C. Mauch,* with him *Milton J. Goodman* and *Justin D. Jirolanio,* for appellees.

OPINION BY MR. JUSTICE DREW, May 9, 1938:

This appeal is the result of the refusal of the court below to submit an issue devisavit vel non to the jury. The learned chancellor, after hearing all of the contestants' testimony, amounting to more than 400 pages of the printed record, concluded it lacked probative force and was legally inadequate to sustain a verdict against the validity of the will. He gave peremptory instructions to the jury to answer affirmatively, that the testator was of sound mind and memory, and that the will was not procured by the exercise of undue influence. Motions for a new trial and judgment n. o. v. were denied, and this appeal followed.

In an issue tried in the common pleas involving the validity of a will, the trial judge sits as a chancellor. And, as said in *Caughey v. Bridenbaugh*, 208 Pa. 414, 415, "In every case tried before a jury in which the trial judge sits as a chancellor, the evidence is addressed to him quite as much as to the jury—must as a whole be judged of by him independently of the jury—must satisfy his conscience as well as the jury—and cannot be rightfully submitted to the jury as the basis of any finding which he would not approve; in a word, he cannot permit the jury to do what he, as a chancellor, would not do: *Rowand v. Finney*, 96 Pa. 192; *Reno v. Moss*, 120 Pa. 49. And since it is his individual judgment upon the evidence given before him, by witnesses appearing before him, that is to control his action, the duty referred to is properly to be performed at the trial of the issue by directing a verdict clearly required, rather than submitting an inadequate case to the jury and in the event of their conclusion being unsatisfactory, setting it aside, . . .": *Phillips' Est.*, 244 Pa. 35; *Tetlow's Est.*, 269 Pa. 486. Upon review, this Court will not reverse unless it finds that the hearing judge has abused his discretion: *Tetlow's Est.*, supra; *Mark's Est.*, 298 Pa. 285.

Testator died on January 30, 1935, at the age of seventy-one, leaving a will dated December 27, 1934. He was survived by seven children, all of full age. His wife died on November 24, 1934. The will, after providing for the payment of debts and the establishment of a trust fund for the saying of masses, provided that five children were each to receive one dollar, and the balance of the estate, approximately $20,000, was to be divided into four parts, two of which were bequeathed to Sts. Peter and Paul Greek Catholic Church, of which the Reverend Alexis Bakaysa was the officiating priest, one part to a son Albert, and the other part to a son Charles.

Contestants alone offered testimony. We have carefully reviewed all of it and are convinced that it was clearly not sufficient to show testamentary incapacity or

undue influence. In fact, it was inadequate to raise even a doubt on either subject. Looked at in the most favorable light, it shows that testator was addicted to alcohol, perhaps suffered from chronic alcoholism; that on occasions he was cruel to his invalid wife, threatened her, actually struck her once, and called her opprobrious names; that his speech on other occasions was vulgar and profane, his voice broken and tremulous, and his gait faltering and unsteady; that he expressed thoughts that his family opposed him, and that his children and the church wished his death so that they might get his money; that on one occasion he struck his son John for no reason at all; that after his wife's death he reviled her and the undertaker, and at the time of her wake he abused the friends who came to the house to express their sympathy and asked why they were there and why they didn't go home.

The testimony indicates a disagreeable old man, and that his conduct, which at times was very objectionable, was caused by excessive drinking. We have held specifically that most of the particulars in this testimony are not enough to show incapacity. Thus, proof of old age, illness, physical disability *(Wilson v. Mitchell,* 101 Pa. 495), failure of memory, garrulous repetition *(Lawrence's Est.,* 286 Pa. 58), peculiar beliefs and opinions *(Buchanan v. Pierie,* 205 Pa. 123), is insufficient, and no inference of incapacity can be drawn from the fact of unnatural testamentary dispositions: *Lawrence's Est.,* supra. Little more was shown here except testator's abuse of his wife and his excessive use of alcohol, vices to be greatly condemned but which are present in persons whose faculties are unquestioned.

The evidence offered to show undue influence was wholly inadequate, even if fully credited, to support the charge according to the standard of proof our cases require. The testimony relied upon by contestants on this point is that Albert Kish, a son of decedent, in the presence of his sister, said to testator: "Your will, the way

you have it, is not right, it should be changed and give everything to the priest and the church. . . ." At another time, in the presence of three of the children, Father Bakaysa said to the testator: "This will must be changed because it is not right. . . ." It does not appear that these expressions influenced testator in the slightest. And there is no improper conduct shown with respect to the execution of the will itself. In order to avail it must be shown that testator's mind was so controlled by another as to destroy its free agency *(Koons's Est.,* 293 Pa. 465, 471; *Wolfe's Est.,* 284 Pa. 169) "at the time and in the very act of making his will": *Tetlow's Est.,* supra, page 496; *Kustus v. Hager,* 269 Pa. 103.

Although only the contestants offered oral testimony, there is much in the case that refutes their contention. It appears that on December 18, 1934, nine days preceding the execution of the will in question, testator was legally adjudged sane and capable of handling his own affairs in a proceeding brought by some of his children to have him declared a weak-minded person and to have a guardian appointed for him. He appeared as a witness in his own behalf and submitted to cross-examination and the scrutiny of the court and counsel. The court dismissed the petition at the costs of petitioners and no appeal was taken from the order. Although not conclusive of the present proceeding *(Brennan's Est.,* 312 Pa. 335), that adjudication was indeed weighty evidence, particularly for the reason that higher intellectual power is required to conduct the continuing affairs of life than to make valid testamentary gifts: *Lawrence's Est.,* supra, page 65. That proceeding was heard and determined by the same learned judge who sat as chancellor in this case. What he then saw and heard, in a proceeding which directly questioned the mental competency of this testator, made him peculiarly fit to weigh and determine the testimony along the same line presented here. The record shows that testator resented

the action and attitude of his children who appeared against him in that proceeding; it probably had much to do with his making a new will and disinheriting some of them shortly thereafter.

As late as October, 1934, the testator discussed with his wife and children the making of a will. Dr. Bachman, who was attending Mrs. Kish, suggested that Alderman Redline was a competent man to write the will, and in the early part of November, 1934, he prepared a will which was signed by this testator, in which Dr. Bachman was named executor. After the execution of that will it remained in the possession of testator until his wife died, when, on the day following, testator with three of his children took the will to the bank and placed it in his safe deposit box. In less than a week thereafter, although these children were present and discussed the making of that will with their father and mother and knew its contents, which gave each of them an equal share, some of them filed the petition praying that he be declared incompetent.

This record shows that on October 8, 1934, testator made a written agreement with his son John for the sale of a garage property, for which John agreed to pay $5,000—which he has since paid. Before signing the agreement, testator questioned all his children to make certain they would be satisfied if John took the garage. It would appear from this testimony that testator was quite competent to handle his affairs and that his children fully recognized the fact.

Complaint is made of the action of the trial judge in excluding the opinions of testator's physician and some lay witnesses, certain of the children, a daughter-in-law, and a neighbor of the testator, as to testamentary capacity. The testimony discloses that Dr. Bachman treated testator for about four months beginning July, 1934; that he last treated him in the latter part of November, 1934; and that he did not see him thereafter. In an attempt to establish lack of testamentary capacity, Dr.

Bachman testified to certain acts, expressions, conduct and symptoms of testator during this period. When asked to express an opinion as to the condition of testator's mind in November, 1934, objection was made and sustained, and properly so. The will was executed December 27, 1934, at least four weeks after the doctor had last seen the patient. Since there was no claim of permanent mental derangement, it must be evident that the opinion which the doctor would express of testator's mental condition in November would be no index to his mind the latter part of December. This would be particularly true of a man whose chief weakness was that of intoxication. This is especially so in the instant case because at least six weeks after the doctor had last seen him and nine days before the making of the contested will, the trial judge, after examining testator and hearing his testimony, and considering the testimony offered against him, dismissed the proceedings to have him declared a weak-minded person. It is also significant that this same doctor suggested the draftsman, and was named executor, of the will which the decedent made and executed in November, 1934. His opinion was of no value to show the condition of testator's mind at the time of the execution of the will. The court below very properly said: "In the case at bar, there was no allegation of permanent derangement, nor was there any proof thereof. There was not a single witness called on behalf of contestants that was able to testify as to the mental condition of decedent at the time of the execution of the will, nor did any witness state any facts on which to base an opinion of soundness or unsoundness of mind at or near the time the will was executed."

As regards the lay witnesses, their opinions were also properly rejected. They were permitted to testify at large as to facts upon which they wished to base their conclusions, but since those facts were entirely inadequate to sustain such opinions, the court very properly rejected them. Obviously the court, under the circum-

stances, would have disregarded such opinions, even if he had heard them. Opinions opposed to established facts are valueless. The situation would be substantially different had the court below found the factual testimony of these witnesses sufficient to warrant submission of the case to the jury, but had, nevertheless, excluded the opinions. Since such is not this case, nothing could be gained by requiring the court, well knowing in advance that such opinions would be disregarded because of the inadequacy of the testimony upon which they were based, to hear the opinions stated. If in any sense this could be regarded as error, it would have to be conceded that it was harmless error.

Judgment affirmed.