473 A.2d 572

## In the ESTATE OF Arthur STEWART, Deceased.

## Appeal of Eva S. HIBBERT, Emma, James, Joseph Martin, David Engle, Everett A. Keene, Ray Engle and Walter Todd, Jr.

Superior Court of Pennsylvania.

Argued Feb. 22, 1982.

Filed Feb. 24, 1984.

Petition for Allowance of Appeal Granted July 11, 1984.

James W. Appel, Lancaster, for appellants.

Melvin Eugene Newcomer, Lancaster, for appellee.

Before SPAETH, BROSKY and BECK, JJ.

SPAETH, Judge:

This appeal is from an order dismissing exceptions to an order denying probate of a will. Appellant argues that under the will she is entitled to appoint the entire estate to herself, subject to the payment of the pecuniary legacies. We agree and therefore reverse.

Arthur Stewart died on March 8, 1979, leaving a three-page handwritten will, as follows:

Nov. 30–78

My last will and testmont

I Arthur Stewart Box 99 Maple Shade Rd. Christiana Pa RD 2

Being in sound mind and memory hereby publish and declair this is my last will and testmont I direct that all my bills and furenal expenses be paid first.

I have two insurance policys with General Steel Ind. in saint Lewis Mo. my holdings are a 31 acre farm on Maple shade Rd. Colarine Township lanc Co. Two savings account one in Quarryville Farmers bank one in South Eastern in Atglen also a checking acc in each. I direct that all my bills be paid and satified by my good friend Eva S Hibbert who is my exsector I also direct that Eva S Hibbert does not have to be bonded or enter security to form a formal account Mrs Hibbert is to appoint who ever she wants to help her settle up the estate.

My friend Eva Hibbert who has been so helpfull to me and Mother she has taking up so much of her time taking care of Mother and me and would not take any money for her service, She is to take and keep what ever she wants from the house or farm and then sell the rest at her convience.

Mrs. Hibbert has taking care of my business for four years and knows all about my estate so she can handle my estate as she sees fit

/s/ Arthur Stewart

To my friends I leave a small rememberance after the estate is settled up.

| | |
|---|---|
| George Cornog | 2000.00 |
| Alice Day | 2000.00 |
| Asbury & Mary Passwaters | 2000.00 |
| Alberta McNiss | 3000.00 |
| Alice Cooper | 1000.00 |
| Shirley O'Neal | 1000.00 |
| Shannon O'Neal | 1000.00 |
| Brandon O'Neal | 1000.00 |
| Jim & Emma Martin for coming to visit mother often | 2000.00 |
| Joseph Martin | 1000.00 |
| Evert Keene | 1000.00 |
| David Engle | 1000.00 |
| Earl Ewing & Tish | 2000.00 |
| Walter Todd, Jr. | 2000.00 |

I have set my hand this day of Nov. 30 1978

/s/ Arthur Stewart

Appellant sought to exercise a general power of appointment under the will, and she requested that the entire estate be awarded to her, subject to payment of the pecuniary legacies. On April 29, 1980, two nephews of the testator filed objections, and after audit the trial court entered an adjudication in which it concluded that the will did not give appellant a power of appointment; that appellant was entitled to take only whatever personal, tangible property she wanted from the house or farm; and that there was an intestacy as to the residue of the estate.

As noted, the will provides that appellant should "handle my estate as she sees fit." Appellant argues that this provision gives her a general, presently exercisable power of appointment over the residue of his estate.

A power is general if the donor of the power does not restrict the class of persons in whose favor it may be exercised; a power is presently exercisable if the donee of the power may exercise it by *inter vivos,* as well as by testamentary conveyance. *See generally* V *American Law*

*of Property* § 23.4 at 467 (A. James Casner ed. 1952) ("The donee of a general power of appointment, where the power is presently exercisable, is effectively the beneficial owner of the property subject to the power. Although technically he has no title to the property until he exercises the power, he can obtain the title, and therefore enjoy all the benefits of ownership, simply by going through a mere formality.").

The trial court concluded that the word " 'handle' means to manage or operate," and is a "word of administration [rather than] a word of disposition." Adjudication at 6. We find this conclusion unpersuasive, for several reasons.

To begin, the trial court ascribed to the testator a skill with words that he didn't have—as the face of the will demonstrates. Words are misspelled (*e.g.*, "furenal"; "declair"; "exsector"; "convience"); sentences are incomplete, or ungrammatical, or both (*e.g.*, "my friend Eva Hibbert who has been so helpfull to me and Mother she has taking up so much of her time taking care of Mother and me and would not take any money for her service."); and administrative and dispositive provisions are mixed up, first one and then the other, in no logical order.

The trial court suggested that to create a general power of appointment in appellant, the testator should have used the word "dispose" instead of "handle." But "dispose" is a fancy word that wouldn't have occurred to the testator. Furthermore, "handle" is not *only* a word of administration. The expression, "You handle it!" is common, and is understood as conferring a very general authority, or power.

Moreover, the trial court's narrow construction of "handle" is inconsistent with two features of the will.

Perhaps the more striking of these features is that the testator signed the will *in the middle*—immediately after his statement that appellant "knows all about my estate and she can handle my estate as she sees fit." Then the testator wrote "next page," and on the next page he listed the pecuniary legacies and signed his name again. This is

consistent only with a broad construction of "handle." Apparently the testator believed that when he had given appellant the power to "handle my estate as she sees fit," he had completed his will. For otherwise he wouldn't have signed his name. The way to construe this will is to think of it as a will giving appellant the power to handle the entire estate as she sees fit, with a codicil giving pecuniary legacies.

The second, almost as striking, feature of the will is the distinction the testator made between appellant and the legatees. While briefly characterizing the legatees as "my friends" to each of whom he was "leav[ing] a small rememberance,". the testator referred to appellant as "my very good friend," explaining that appellant "has been so helpfull to me and Mother she has taking up so much of her time taking care of Mother and me and would not take any money for her service," and "has taking care of my business for four years," and further manifesting his confidence in appellant by providing that she "does not have to be bonded or enter security to form a formal account" and may "appoint whoever she wants to help her settle up the estate." The testator's intention to be more generous to appellant than to any the legatees is unmistakable.

These features of the will powerfully support the view that "handle" should not be narrowly but broadly construed. It appears that by the first, signed, part of his will the testator intended to confer a very general authority, or power, upon appellant as a person for whom he had special regard ("Here is my estate. You handle it!"), but that by the second "codicil", part, he decided to confine this authority, or power, slightly, by providing that certain friends were each to receive "a small rememberance."

■ It is a fundamental principle that in construing a will, we must give effect to the testator's intention, and we can't do that unless we consider *every* feature and *all* of the words of the will. *In re Estate of Kohler,* 463 Pa. 150, 344 A.2d 469 (1975); *Burleigh Estate,* 405 Pa. 373, 175 A.2d 838 (1961). In construing "handle" as though it gave appellant

only the power to administer the estate, the trial court failed to give effect to this principle.

■ We understand, and indeed have some sympathy with, the trial court's unwillingness to construe "handle" as broadly as appellant urges—as giving her a general, presently exercisable power of appointment over so much of the estate as remains after payment of the legacies. For appellant wishes to appoint to *herself,* which is to say, *not* to the testator's family. But to be unwilling to permit an estate to go outside the family is to beg the question. The question is, How did the testator *want* his estate to go? If he wanted it to go outside the family, then it must go that way. For a court's responsibility is not to protect the family's interests but to give effect to the testator's intention. *See Kish v. Bakaysa,* 330 Pa. 533, 199 A. 321 (1938); *In re Agostini's Estate,* 311 Pa.Super. 233, 457 A.2d 861 (1983). Here, the testator's intent is clear.

The residue of this estate is some $97,000. By construing "handle" narrowly, the trial court declared that this residue goes by intestacy. For if the direction, "she can handle my estate as she sees fit," doesn't empower appellant to dispose of the residue, nothing in the will disposes of it—as the trial court recognized. The intestate heirs are five nephews and one grandnephew. Of these six persons, the testator named five as pecuniary legatees. Thus, under the trial court's adjudication, persons to whom the testator said he intended to leave only "a small rememberance", of $1,000 or $2,000, would instead each receive, in addition to a legacy, $16,450.04 (one sixth of the residue), while appellant, for whom the testator expressed such special regard, would receive only the proceeds of the sale of the items she took from the house or farm ($16,452.53).

■ We see no need thus to defeat the testator's intention. Sometimes, of course, a court can't avoid finding an intestacy. But a will should be construed to "dispose of [the testator's] estate.... 'unless [such a construction] does violence to the language of the will.'" *Farrington Will,* 422 Pa. 164, 168, 220 A.2d 790, 793 (1966) (quoting *Biles v.*

*Biles,* 281 Pa. 565, 568, 127 A. 235, 236 (1924). *See also Vandergrift Estate,* 406 Pa. 14, 26, 177 A.2d 432, 438 (1962). Our construction, that the testator's direction that appellant should "handle [the testator's] estate as she sees fit" gave her a general, presently exercisable power of appointment, does no violence to the language of the will. "[N]o technical form of words is required to create a power of appointment . . . ." *In re Estate of Kohler, supra,* 463 Pa. at 153, 344 A.2d at 471. *See also Keffalas Estate,* 426 Pa. 432, 437, 233 A.2d 248, 251 (1967); *American Law of Property* § 23.10, at 483 (A. James Casner ed. 1952); RE-STATEMENT OF PROPERTY § 323 comment a (1940). Our construction further gives effect to the entire will, and implements a scheme of distribution plainly consistent with the testator's intention as manifest in his will.

We therefore conclude that the trial judge should have approved appellant's proposed schedule of distribution.

The order of the trial court is reversed and the case is remanded for proceedings consistent with this opinion.

Jurisdiction is relinquished.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I respectfully dissent. I would agree with the court below that the term "handle" was intended to be a "word of administration" rather than a "word of disposition" and, therefore, that appellant was not given a general power of appointment. Initially, I note that:

"It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator." To ascertain this intent, a court examines the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding execution of the will and other facts bearing on the question. Should the testator's intent remain uncertain, a court resorts to canons of construction to supply the testator's likely intent. The intent of a testator must appear with reasonable certainty, such that there can be little doubt of his intent. If,

from the language of the document, the scheme of distribution, and the relevant facts and circumstances, a court cannot determine a testator's intent with reasonable certainty, it must resort to canons of construction.

*Estate of Sykes,* 477 Pa. 254, 257, 383 A.2d 920, 921 (1978) (citations and footnote omitted).

The words in the will which gives rise to the issue in controversy concerning the disposition of the residuary estate are as follows:

> Mrs. Hibbert has taking [sic] care of my business for four years and knows all about my estate so she can handle my estate as she sees fit.

s/ Arthur Stewart

Appellant first contends that the meaning of this clause is made ambiguous by the word "handle" and, thus, that we must resort to canons of construction. Alternatively, she argues that the clause indicates the testator's actual intent to confer upon her a power of appointment of the residuary estate.

In support of the latter contention, appellant cites the case of *Estate of Seifert,* 22 Lehigh County Law Journal 425 (1947). There, the testatrix devised her estate to one Susan Hudson, "to be disposed of as she sees fit." The court concluded that Hudson had been given a power of appointment and that she had effectively exercised it in favor of herself.

Instantly, the court below determined that "handle" is not an ambiguous term, but means "to manage or operate" and is a word of administration; while dispose means "to get rid of" and is a word of disposition. It therefore concluded that the present will conferred on appellant only the power to administer or manage the estate, while in *Seifert,* the testatrix conferred the power to determine the individuals entitled to receive.

I agree with this determination by the court below and find that it is reinforced by other language in the will. As noted by the majority, we must consider every feature and all of the words of the will in order to give effect to the

testator's intention. *In re Estate of Kohler*, 463 Pa. 150, 344 A.2d 469 (1975). In so doing, I note that in the clause immediately preceding the one in question, the testator stated that appellant was to take and keep whatever she wanted from the house and farm and then sell the rest at her convenience. Clearly, the testator understood quite well the meaning of the words "take, keep and sell." If the will gave appellant a general power of appointment, she certainly had the power to take and keep whatever she wanted from the house and farm regardless of the language that specifically enabled her to do this. If the testator had intended that appellant have the power to take all of the residuary estate, there would have been no reason to include the language [1] in the last sentence.

Thus, if we were to conclude that appellant did have the power to dispose of the residuary estate, we would be rendering the immediately preceding language nugatory. "It is fundamental that the construction of a will which renders portions of it nugatory is not to be preferred to one which makes every word operative." *Wright Estate*, 391 Pa. 405, 410, 138 A.2d 102, 108 (1958). Therefore, I would conclude that the testator's intent was to give her something of the estate but not all of it.

I thus agree with the court below that it can be determined from examination of the language of the will that the testator did not intend to confer the power to dispose of the estate on appellant, only the power to administer it and, accordingly, I would affirm the trial court's order.

---

**1.** Appellant suggests that this clause was probably the result of a layman's misconception that an executor must liquidate everything in order to settle an estate and that he simply wanted her to be able to take property in kind. While this may be a plausible explanation, for purposes of construction of this will, we can regard it as no more than mere speculation. "In expounding a will, it is not what the Testator may have meant, but what is the meaning of his words. It does not extend to a consideration of what Testator might have said but did not say...." *Swope Estate*, 383 Pa. 494, 496, 119 A.2d 57, 58 (1956).