## Pedrick Estate

*Maria Musti Cook,* for petitioner.
*Jon C. Countess* and *John D. Flinchbaugh,* for respondent.

MILLER, *J.,* June 4, 1993—This matter is before the court on the objections filed by Margot A. Currie to the first and final account of Mollie P. Pedrick, executrix of the estate of Richard G. Pedrick, deceased, late of Spring Garden Township, York County, Pa.

The factual background is relatively straightforward. Richard G. Pedrick died on May 8, 1991, testate and survived by his wife, Mollie P. Pedrick, and three children: Margot A. Currie, who is decedent's daughter by a former marriage that ended in divorce; Richard G. Pedrick Jr., and Katharine P. Noel, both of whom are decedent's children of his marriage to Mollie Pedrick.

In Item IV of his last will and testament, dated June 29, 1990, and admitted to probate in the Office of the Register of Wills of York County on May 13, 1991, the decedent provided for the creation of a "Credit Equivalent Trust" and designated that his son, Richard Pedrick Jr., and his daughter Katharine Noel would serve as co-trustees. The purpose of the trust was to provide a source of income for Mollie Pedrick for her

lifetime, and upon her death the balance of the trust funds would pass to his children. Specifically, items IVA-D of the testamentary trust provided that Mollie Pedrick would receive the income of the trust and would have the power to withdraw from the principal in any one given year an amount not in excess of the greater of $5,000 or 5 percent of the market value of the principal. Upon Mollie Pedrick's death, the decedent provided that the principal and undistributed income remaining in the trust would "be divided into as many equal shares as there shall be children of mine then living..."

On August 13, 1991, Mollie Pedrick executed an unconditional partial disclaimer specifically disclaiming her interest in the income of the trust as well as her $5,000/5 percent right to withdraw from the principal of the trust. Paragraph 4 of the disclaimer specifically provides as follows:

"I hereby irrevocably disclaim all powers and beneficial rights and interests enjoyed by me, with respect to the income of said 'Credit Equivalent Trust.'"

On November 5, 1991, Mollie Pedrick, Katharine Noel, and Richard G. Pedrick Jr., entered into a family settlement and indemnification agreement which provided for the disposition of the estate assets to Katharine Noel and Richard G. Pedrick Jr. The agreement provided further that the parties named above were "all of the parties interested ... in the estate of Richard G. Pedrick." Decedent's daughter Margot Currie was not mentioned in the agreement nor was she ever contacted by the other beneficiaries regarding the agreement.

On or about September 30, 1992, Mollie Pedrick, as executrix of the decedent's estate, filed a first and final account of the estate with this court. On the

same date, Mollie Pedrick filed a petition for adjudication in which she requested the court's permission to revoke her unconditional, irrevocable partial disclaimer and in which she claimed her executor's fees in the amount of $18,386.89.

On or about November 4, 1992, Margot Currie filed objections to the first and final account of Mollie Pedrick in which Margot Currie requested that the court: deny Mollie Pedrick's request to revoke her disclaimer; disallow the executor's commission of $18,386.89; appoint Margot Currie as co-trustee with the decedent's other children, or, in the alternative appoint an independent successor trustee; and require an annual accounting of the trust.

An evidentiary hearing was held on January 26, 1993, and this opinion follows.

## ISSUES PRESENTED

The following issues are before the court:

(1) Whether Mollie Pedrick should be permitted to revoke her unconditional partial disclaimer of her interest and rights in the decedent's estate where she declared in the disclaimer that the disclaimer was irrevocable;

(2) Whether Mollie Pedrick should be permitted to claim her executor's fees of $18,386.89;

(3) Whether Margot Currie should be appointed co-trustee of her father's testamentary trust; and

(4) Whether the co-trustees should file an annual account of the trust assets.

## DISCUSSION

We consider first whether Mollie Pedrick should be permitted to revoke her unconditional partial disclaimer.

Chapter 62 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. §101 et seq., deals with disclaimers. Section 6201 provides that in order for a disclaimer to be valid, it must (1) describe the interest disclaimed; (2) declare the disclaimer and extent thereof; and (3) be signed by the disclaimant. We are satisfied from our review of the disclaimer in the instant case that Mollie Pedrick complied with all of the above requirements and, accordingly, we find the disclaimer to be valid. The parties do not dispute, however, the validity of the disclaimer. What they do dispute is whether Mollie Pedrick may now revoke her disclaimer.

With regard to the effect of a disclaimer, section 6205(a) provides that a disclaimer "relates back for all purposes to the date of the death of the decedent." As to the effect of the disclaimer on the rights of other parties, the disclaimer is "equivalent to the disclaimant's having died before the decedent in the case of a devolution by will or intestacy." Section 6206(b).

Applying the above statutory provisions to the instant case, Mollie Pedrick's disclaimer effectively meant that she would be considered as having predeceased the decedent, a situation contemplated by the decedent in item IVD of his will, which provides, in pertinent part, that:

"Upon the death of my wife, Mollie P. Pedrick, *or in the event that she should predecease me,* the principal and any undistributed income of the Credit Equivalent Trust . . . shall be divided into as many equal shares as there shall be children of mine then living..." (emphasis added)

Thus, the disclaimer had the effect of accelerating the bequests to the decedent's children and terminating the trust. It follows then that revocation of the disclaimer would effectively reinstate the trust until Mol-

lie's death, unless, of course, Mollie were to execute another disclaimer at a later date.

We find no provision in Chapter 62 that specifically authorizes revocation of a disclaimer. We note, however, the language of section 6205(a) which states that the disclaimer "shall be *binding* upon the disclaimant and all persons claiming through or under him" (emphasis added), and we are satisfied that such language is sufficient to hold Mollie Pedrick to her disclaimer. Such a result is clearly what she must have contemplated when she executed the document which provided in paragraph 4 as follows:

"I hereby *irrevocably* disclaim all powers and beneficial rights and interests enjoyed by me, with respect to the income of said 'Credit Equivalent Trust.'" (emphasis added)

And in Paragraph 5, she went on to disclaim all rights and interests with regard to the principal of the trust. While the word "irrevocably" does not appear in Paragraph 5, we have no doubt that at the time she signed the disclaimer Mollie Pedrick intended to be bound by her agreement.

Mollie Pedrick argues that she should be allowed to revoke her disclaimer because it was the intention of the decedent to provide a source of support for her. As in all will cases, we recognize that it is the responsibility of the court not to protect the interest of the family but to give effect to the intent of the testator. *Estate of Stewart,* 325 Pa. Super. 545, 473 A.2d 571 (1984). While we agree with Mollie Pedrick that the decedent's intention was to provide for her as his surviving spouse, we also recognize that the decedent wanted the balance of the trust funds distributed to his children in the event his wife predeceased him. As noted above, the effect of Mollie Pedrick's disclaimer

is that she is considered as having predeceased her husband. The "event" occurred upon execution of the disclaimer, and we are satisfied that the decedent's intent has been protected.

We agree with counsel for both parties that there is little guidance from our appellate courts on the subject of revocation of disclaimers. The lower court cases cited by Mollie Pedrick are inapposite. In *Zepp Estate,* 4 Pa. Fiduc. 2d 281 (O.C. Montgomery 1984), the trial court permitted revocation of a disclaimer by a church where the disclaimer was based solely on the church's desire to avoid involvement in a family dispute. When the executors then offered the bequest to a different church which had not been mentioned in the will, the disclaiming church sought to revoke its disclaimer on the grounds that to disallow revocation would frustrate the testator's intentions. The situation is clearly different in the instant case where the disclaimer merely accelerates the date of distribution to the intended beneficiaries. Nor do we find *Days Estate,* 22 Pa. Fiduc. 662 (O.C. Delaware 1970), persuasive because that case involved fraud upon the disclaimant. There is nothing in the instant case to support a finding that Mollie Pedrick was fraudulently induced into signing the disclaimer.

Mollie Pedrick further argues that revocation should be permitted because she was mistaken as to fact and law regarding the consequences of her disclaimer. Specifically, she contends that had she known that anyone other than her two children from the decedent would benefit by her disclaimer, she would not have disclaimed her interest. The language of decedent's will, however, is clear. In Item III, the decedent devised his entire estate, in the event Mollie Pedrick had predeceased him, as follows: "in equal shares to my surviving

children, to be divided among them in kind as they may agree." In Item IV, the decedent provided for the contingency that Mollie might survive him; in that event, the decedent devised his entire estate, in trust, to his son, Richard G. Pedrick Jr., and his daughter Katharine P. Noel for the benefit of Mollie during her lifetime, and upon Mollie's death the balance of the trust corpus would devolve as follows: "[to] be divided into as many equal shares as there shall be children of mine then living...."

We find no ambiguity in the language of decedent's will. When selecting those he intended to serve as trustees, he nominated two of his children by name, and when selecting those he intended to be his residuary beneficiaries, he named them by class, "my children." Courts have generally held that the designation of beneficiaries by a class description only, such as "grandchildren" or "children," strongly reveals the testator's group-mindedness. Conversely, designation by names alone indicates an intention to make a gift to individuals. *Estate of Clark*, 460 Pa. 41, 331 A.2d 480 (1975). "Children" means the *natural* children of the testator. *Kurtz Estate*, 145 Pa. 637, 23 A. 322 (1892). Only if the testator's intent does not appear with reasonable certainty will a court resort to canons of construction. Since we find no ambiguity, we look no further than the language itself.

While we recognize that Mollie Pedrick may have misinterpreted the decedent's will as providing that only her two children would benefit therefrom, we are not persuaded that such a misunderstanding supports the revocation of a valid, binding disclaimer. Mistake may be relevant in the law of contract, but there is nothing to suggest that a disclaimer is a contract.

Similarly, the argument that the disclaimer was not supported by consideration is without merit. Again, consideration is required to support a contractual promise, not a disclaimer of a testamentary devise. Even if we were to conclude the contrary, we are satisfied that sufficient "consideration" would be shown in the benefit to the two children of the disclaimant, they being the natural objects of her bounty.

Accordingly, for the reasons set forth above, we are satisfied that the unconditional partial disclaimer executed by Mollie Pedrick is valid and that it is irrevocable. To conclude otherwise would contravene the language of section 6205(a) of the P.E.F. Code that a "disclaimer shall be binding upon the disclaimant and all persons claiming through or under him." We therefore grant Margot Currie's prayer to refuse Mollie Pedrick's request to revoke her disclaimer.

The next issue for our determination is whether Mollie Pedrick is entitled to compensation for her performance as executrix and whether she waived compensation by failing to claim compensation on the Pennsylvania inheritance tax return or prior to the transfer of estate assets into the testamentary trust.

We note first that Paragraph XI of the decedent's will expressly provides for reasonable compensation for the personal representative and that such compensation is further authorized by the P.E.F. Code. Section 7185(a) specifically provides that "[t]he court shall allow such compensation to the [fiduciary] as shall in the circumstances be reasonable and just." Section 7185(c) provides that:

"Where compensation of a fiduciary is expressly prescribed either by provision of a will or deed of trust or other instrument under which he is acting or by provisions of an agreement between him and the creator

of a trust, nothing in this section shall change in any way the rights of any party in interest or of the fiduciary."

The general rule is that fiduciaries in this Commonwealth are entitled to fair and just compensation for their services. *In re Estate of Salus,* 421 Pa. Super. 87, 617 A.2d 737, 740 (1992), citing *In re Ischy Trust,* 490 Pa. 71, 415 A.2d 37 (1980). While the compensation claimed must be based on services actually performed and not on some arbitrary formula and while the court may allow only those fees as are reasonable in view of the nature and extent of the fiduciary's service, the determination of what compensation is fair and reasonable in a given case is left to the sound discretion of the trial court. *Id.*

The fiduciary bears the burden of showing the reasonableness of the claim, but once reasonableness has been established, the burden shifts to the contestant to demonstrate why the commission claimed should not be allowed. *In re Ischy Trust,* 490 Pa. at 82, 415 A.2d at 42-43. Of course, a fiduciary may waive his or her right to compensation, either by express disavowal or by conduct or omission. *Id.*

Preliminarily, we are satisfied that Mollie Pedrick has not waived her right to compensation for her services as executrix of the decedent's estate. Margot Currie argues that such a waiver may be found since Mollie Pedrick neither claimed her commission on the inheritance tax return nor claimed it prior to the transfer of the estate assets into the testamentary trust. We disagree. In *Ischy,* our Supreme Court found that the mere failure to express an intention to collect compensation in the future was not sufficient to support a finding of waiver. In that case, the trustee had filed several informal accounts with

the court without claiming its commission in those accounts and, after negotiations, entered into a settlement agreement, again without claiming its commission. Despite such circumstances, the court found no waiver. In *Salus,* the Superior Court likewise found no waiver either in the trustee's failure to seek payment of commissions at any time during his actual administration of the trusts or in the failure to include provisions regarding the payment of commissions in the family settlement agreement executed by the trustee and the other beneficiaries.

In the instant case, although Mollie Pedrick did not submit a claim for her compensation to the estate until she filed her first and final account on September 30, 1992, her explanation was that at the time there was no cash available to pay the commission and that the estate would have had to sell stocks to pay it. We are satisfied that the facts before us that Mollie Pedrick did not waive her prima facie right to compensation. That decided, the next inquiry is whether the amount claimed, $18,388.89, is reasonable and just.

As noted above, the determination of the reasonableness of compensation is discretionary with the court. Mollie Pedrick testified as to her duties as executrix. She met frequently with counsel for the estate and with investors, assisted counsel in preparing the inventory of estate assets, and performed all administrative tasks requested of her by counsel. The amount she now claims represents approximately five per cent of the value of the estate.

Our experience has shown us that courts across this Commonwealth have employed, from time to time, various fee schedules similar to the one presented in *Johnson*

*Estate,* 4 Pa. Fiduc. 2d 6 (O.C. Chester 1983).[*] The schedule in *Johnson* presents an example of compensation calculated on a graduated percentage, which is expressly authorized by the P.E.F. Code in section 7185(a). We are satisfied that the following schedule will produce a fair and reasonable compensation for Mollie Pedrick; 5 percent of the first $100,000, or $5,000; 4 percent of the second $100,00, or $4,000; and 3 percent on the balance of approximately $168,000, or $5,040. Thus, we find that Mollie Pedrick is entitled to compensation in the amount of $14,040, which represents a reduction in the commission claimed of approximately $4,346. Even in the absence of the suggested fee schedule, we are satisfied that a commission of $14,040 is reasonable and just under the facts of this case.

Next, we consider Margot Currie's request to be appointed co-trustee of her father's testamentary trust in which he named his daughter Katharine P. Noel and his son, Richard G. Pedrick Jr., as co-trustees of the trust for the benefit of Mollie Pedrick. Margot Currie argues that such an appointment is necessary to protect her share of the trust funds from depletion by Mollie Pedrick. We are satisfied, however, that such a step is not appropriate given the decedent's wishes in his will nor is it necessary in view of our refusal to permit Mollie Pedrick to revoke her disclaimer. Because we have determined that the disclaimer is binding, the trust will terminate as of course and the trust assets will be distributed according to the

---

[*] We note that the Attorney General has disclaimed the fee schedule set forth in *Johnson* as not being endorsed by that office.

provisions of the decedent's will. Accordingly, we refuse Margot Currie's request that she be appointed co-trustee.

Finally, we consider Margot Currie's prayer for an annual accounting of the trust. Because we have determined that the disclaimer is irrevocable, the trust is terminated, and, therefore, an accounting is no longer necessary.

This opinion will be incorporated into the adjudication to be entered on the first and final account. Accordingly, we enter the following order.

## ORDER

And now, June 4, 1993, the prayer of the petitioner to deny the revocation of the unconditional partial disclaimer by the executrix is granted; the prayer of the disallowance of executor's compensation is granted in part and refused in part in accordance with the foregoing opinion; the prayer for appointment of the petitioner as co-trustee of the decedent's testamentary trust is refused; and the prayer for an annual accounting is refused.