617 A.2d 737

**In re ESTATE OF Arthur S. SALUS, Deceased.**

**Appeal of Samuel W. SALUS and Liane S. Kohn.**

**ESTATE OF Arthur S. SALUS, Deceased.**

**In re ESTATE OF Samuel W. SALUS, Deceased,**

**for Estate of Samuel W. Salus.**

**Appeal of Samuel W. SALUS and Liane S. Kohn.**

**In re ESTATE OF Ada R. SALUS, Deceased,**

**for Estate of Ada R. Salus.**

**Appeal of Samuel W. SALUS and Liane S. Kohn.**

Superior Court of Pennsylvania.

Argued June 4, 1992.

Filed Nov. 30, 1992.

Edward J. Hayes, Philadelphia, for Samuel Salus and Liane Kohn.

Sidney E. Herold, Philadelphia, for Estate of Arthur and Ada Salus, Deceased.

Before CAVANAUGH, DEL SOLE and BECK, JJ.

OPINION PER CURIAM:

In these consolidated appeals from three final orders of the Orphans' Court Division of the Court of Common Pleas of Philadelphia, the issues posed are:

1. Did the trial court err in deciding that terminal commissions were due to appellee, the Estate of Arthur S. Salus, Deceased, for work performed by the deceased as trustee of three family trusts where the court had before it the final trust accounts, but the estate did not submit additional evidence of the specific services performed?

2. Did the trial court err in refusing to find that the deceased had waived his right to terminal commissions by failing to request any prior commissions and by failing to preserve the right to terminal commissions in a family settlement agreement concerning the investment of the trust assets which was executed by the deceased and appellants, the remaindermen of the trusts, nine years before the termination of the trusts?

The facts giving rise to these issues are as follows. Samuel W. Salus and Ada R. Salus were husband and wife. Samuel died in 1945 leaving a will which established a trust providing for the payment of income to Ada for life (hereinafter "the Samuel trust"). Arthur S. Salus, their son, was the successor life tenant of the trust and the sole trustee. The Estate of Arthur S. Salus is the appellee herein.

Ada died in November of 1963. Her will provided that one-half of the residue of her estate was to be placed in a trust with the net income to be paid to Arthur for his life with the principal remainder to go to her grandchildren, Samuel W. Salus, II, and Liane S. Kohn (hereinafter "the Ada trust"). The latter are the appellants herein and are Arthur's children. Arthur was also the sole trustee of Ada's trust.

At some time during Arthur's administration of these trusts, a dispute arose between Arthur and appellants regarding various investments in both trusts, the overall investment philosophy applied to the trusts, and Arthur's general management of the trusts. Appellants objected to what they perceived to be Arthur's investment philosophy, which they thought emphasized production of income to the detriment of appreciation of principal.

As a result of these disagreements and after negotiations between the parties, in 1980 Arthur entered into a Family

Agreement (the "Agreement") with appellants. The Agreement provided that appellants would not file objections to the First Accounts of the trusts which Arthur had filed in the Orphans' Court. The Agreement further stated that appellants released Arthur from "any and all claims that each does, has or may have against Arthur and his successors for all his acts as Trustee of the Samuel W. Salus Trust and Ada R. Salus Trust from the beginning of the world to the date of these presents...."

In return, Arthur agreed that a co-trustee would be appointed to administer the trusts with him. Arthur also agreed that he would create a separate inter vivos trust which he would fund with $30,000 and which would provide that Arthur would have the right to income for life, the remainder to be paid to appellants on Arthur's death (hereinafter "the Arthur trust"). Finally, Arthur agreed that the investment policy of the three trusts would be maintained evenly between the production of income and the appreciation of principal. The Agreement made no mention of trustee commissions.

Arthur died in March of 1989. His death caused each trust to terminate, thereby causing an account to be filed in each of the three trusts. At the audit of these accounts, counsel representing the estate appeared and made a claim for terminal principal commissions claimed to be earned by Arthur during his administration of the trusts. The amounts claimed were:

| | |
|---|---|
| Samuel W. Salus Trust | $18,954.00 |
| Ada R. Salus Trust | $14,654.00 |
| Arthur S. Salus Trust | $ 2,030.00 |

The surviving trustee of the three trusts, Jay Ochroch, objected, contending that Arthur had impliedly waived any claim to commissions and, if waiver were not found, that any services Arthur had performed for the trusts were of no value. A hearing was held before the Honorable Joseph C. Bruno on June 27, 1990. At the hearing, counsel for the estate submitted a memorandum of law in support of the estate's claim, but did not present any independent evidence of services Arthur had rendered. He argued that no such evidence was avail-

able, since no time records of Arthur's services were available, and Arthur himself was unavailable to testify as to the specific services he had rendered. Counsel for the estate argued that the auditing judge could award commissions based on the number of years Arthur had served as trustee and based on the information contained in the Final Accounts concerning the trusts' assets and the transactions that had occurred in the trusts.

Counsel for the surviving trustee presented legal argument regarding the waiver issue, and then called the surviving trustee to testify. The trustee testified that when he had assumed responsibility as co-trustee of the three trusts in 1980, the trust assets were given over to Continental Bank as custodian, and the bank had done all accounting and preparation of tax returns. He stated that he and Arthur had had conversations and meetings regarding the trusts, but that Arthur had not done anything to benefit the trusts in the years from 1980 to 1989. Rather, the surviving trustee stated that he had to argue with Arthur to restrain him from continuing to maximize income to the detriment of principal appreciation in the trusts. The surviving trustee did not testify as to any events occurring prior to 1980, when Arthur was the sole trustee of the Samuel and Ada Salus trusts, other than to recognize that Arthur and appellants had disagreements concerning the administration of the trusts prior to that date.

Shortly after the hearing, the trial court entered adjudications in which it determined that Arthur had not waived his right to terminal commissions on any of the trusts and that Arthur's estate was due the following terminal commissions:

| | |
|---|---|
| Samuel S. Salus Trust | $14,000 |
| Ada R. Salus Trust | $10,000 |
| Arthur W. Salus Trust | $ 1,000 |

Thus, the trial court awarded a total of $25,000, representing a reduction of the amount claimed by the estate of $10,638. Exceptions to the court's adjudications were filed by appellants. These exceptions were denied and the trial court's adjudications affirmed by orders of an en banc panel of the

Orphans' Division on November 18, 1991. This timely appeal followed.

Compensation to trustees is expressly permitted by statute in this Commonwealth, as follows:

(a) When allowed.—The court shall allow such compensation to the trustee as shall in the circumstances be reasonable and just, and may take into account the market value of the trust at the time of the allowance, and calculate such compensation on a graduated percentage.

(b) Allowed out of principal or income.—The fact that a fiduciary's service has not ended or the fact that the trust has not ended or the fact that the trust is perpetual shall not be a bar to the fiduciary's receiving compensation for his services out of the principal of the trust. Whenever it shall appear either during the continuance of a trust or at its end, that a fiduciary has rendered services for which he has not been fully compensated, the court having jurisdiction over his accounts shall allow him such original or additional compensation out of the trust income or the trust principal or both, as may be necessary to compensate him for the services theretofore rendered by him. The provisions of this section shall apply to ordinary and extraordinary services alike.

(c) Compensation prescribed by will or other instrument.—Where the compensation of a fiduciary is expressly prescribed either by provisions of a will or deed of trust or other instrument under which he is acting or by provisions of an agreement between him and the creator of the trust, nothing in this section shall change in any way the rights of any party in interest or of the fiduciary.

20 Pa.C.S.A. § 7185 (1975 & Supp.1992–93).

The Supreme Court has stated the general principles applicable to trustee compensation as follows:

We begin with the established principle that fiduciaries in this Commonwealth are entitled to fair and just compensation for services they perform, *Williamson Estate,* 368 Pa. 343, 82 A.2d 49 (1951); *Kennedy Trust,* 364 Pa. 310, 314, 72 A.2d 124, 126 (1950), a rule required by statute, 20 Pa.C.S.A.

§ 7185. Thus the absence of any compensation provision in a trust document or the absence of any independent compensation agreement is not a bar to compensation. *Reed Account*, 467 Pa. 371, 376, 357 A.2d 138, 140–41 (1976); *Bosler's Estate*, 161 Pa. 457, 462, 29 A. 57, 60 (1894); Restatement (Second) of Trusts § 242 (1959). Rather it is *presumed* that fiduciaries will receive reasonable compensation for their services.

To be sure, the compensation claimed by a fiduciary must be based on services actually performed and not on some arbitrary formula. *Breyer Estate*, 475 Pa. 108, 119, 379 A.2d 1305, 1311 (1977) (burden on fiduciary to show reasonableness of claim and absence of prior payment). And, at least in the absence of a prior valid compensation agreement, when claims for compensation are presented to the orphans' court it has always been the responsibility of the auditing judge to allow only such fees as are reasonable given the nature and extent of the fiduciary's service. Nevertheless, the determination of what compensation is fair and just in a particular case is a task we have consistently and necessarily left to the sound discretion of the chancellor. *Id.* at 119, 379 A.2d at 1311; *Thompson Estate*, 426 Pa. 270, 278, 232 A.2d 625, 629 (1967); *Wallis Estate*, 421 Pa. 104, 110, 218 A.2d 732, 735 (1966).

*In re Ischy Trust*, 490 Pa. 71, 415 A.2d 37, 42–43 (1980) (emphasis added); *In the Matter of Indenture Agreement of Charlotte S. Lawson*, 414 Pa.Super. 550, 607 A.2d 803, 805 (1992) (right of trustee to compensation upon *termination* of trust is well established).[1]

 It has also been recognized that a trustee may, either expressly or by conduct or omission, waive his prima facie right to compensation upon termination of a trust. In determining whether a waiver has occurred, we must ascertain whether the fiduciary has, either by words or deeds, created a basis for a reasonable belief that compensation will not be

1. There is no dispute that in this case, none of the trust documents address the subject of trustee compensation, nor are there any independent agreements concerning this subject.

sought, such that a beneficiary may rely on such a belief. *In re Ischy Trust*, 490 Pa. at 81, 415 A.2d at 43. Moreover, the conclusion of the trial court regarding whether a waiver has occurred is a conclusion of law as to which our review is plenary. *Id.*

In the instant case, appellants argue that Arthur Salus waived his right to commissions upon termination of the three trusts by failing to seek payment of commissions at any time during his actual administration of the trusts, particularly in connection with the 1980 accounts filed as to the Samuel and Ada trusts, and by failing specifically to include provisions regarding the payment of commissions in the Family Agreement executed in 1980. The trial court found neither failure constituted a waiver of a right to future principal commissions on termination of the three trusts. We agree.

A similar argument was made in *Ischy Trust, supra.* There, beneficiaries of two trusts objected to the trustee's claim for a termination fee on principal and for a distribution fee on income. The beneficiaries and the trustee had previously disagreed on the trustee's handling of the trusts and the trustee had, pursuant to order of the Orphans' Court, furnished the beneficiaries with informal accounts of the trusts. No claim for commissions appeared in those accounts. After negotiations, the parties entered into a settlement agreement and later agreed to a further memorandum of understanding as to certain of the issues that had arisen between them. The parties agreed that both trusts would be terminated, with final distribution of income and principal. Neither document specifically addressed the payment of commissions. Both documents clearly reflected the parties' understanding that there were certain issues that were still left unresolved between them and that the trustee would, at the time of final distribution, file worksheets reflecting recent transactions in the trusts, to which the beneficiaries had the right to object. When the trustee filed these worksheets, they included claims for income and terminal principal commissions. The beneficiaries objected, contending that the trustee had waived its right to commissions by failing to submit a claim to them in

the prior informal accounts or in any of the parties' agreements.

The *Ischy* court rejected this argument, stating:

our research reveals no prior case in which the mere failure to express an intention to collect compensation in the future has been sufficient to support a finding of waiver.... Given the established presumption that all fiduciaries are entitled to reasonable compensation for their services and given the on-going nature of the negotiations in this case, the evidence does not, in our view, support the conclusion that the Bank has waived its claim.

. . . .

A waiver may not be found simply where the fiduciary has not demanded compensation before the usual time for its payment has occurred.

*Id.* at 81–83, 415 A.2d at 43–44.

We find the instant case closely analogous to *Ischy* in regard to the waiver issue. Here, as in *Ischy*, appellants are attempting to attribute to the trustee's actions a legal significance that they do not have. Arthur's failure to seek payment of a commission in connection with the first accounts filed with regard to the Samuel and Ada trusts in 1980 does not indicate an intent to waive the right to future payment of a commission on the termination of those trusts, which did not occur until nine years later when Arthur died. Equally, the Family Agreement executed in 1980 contains no mention of the question of terminal commissions, either as to the extant Samuel and Ada trusts, or as to the Arthur trust created pursuant to the Agreement. Moreover, there is no evidence outside of the Agreement that the Agreement was intended to foreclose the possibility of payment of terminal commissions.

Appellants counter that this case is more analogous to *Scull's Appeal*, 249 Pa. 57, 94 A. 476 (1915), wherein the trial court found a waiver of commissions and the Supreme Court affirmed. In *Scull's Appeal*, the trustee failed to claim commissions on any prior income distributions from the trust. Furthermore, the trustee had failed to claim any commissions

either when the balance of the settlor's estate, of which the trustee was also the executor, had been distributed, or when the trust had been established. Given this consistent failure to claim commissions, despite the fact that such commissions could have been claimed at the time of each distribution, the trial court concluded that the trustee had waived his right to claim a commission on the final distribution of the principal. The Supreme Court affirmed, without discussion of the legal principles applicable to a finding of waiver.

We do not find *Scull's Appeal* analogous to this case because, as the trial court reasoned, *Scull's Appeal* involved a trustee who, as executor of the settlor's estate, had previously distributed the entire principal of the settlor's estate except for the trust assets, but had not sought a commission from principal at the time of that distribution. Those facts are not at all comparable to the case before us, in which the trustee had never made a distribution of principal as to which he failed to claim a commission.

In addition, cases decided by our Supreme Court much more recently than *Scull's Appeal* make it clear that even where a trustee has a right to claim interim compensation from the principal of a trust during the term of the trust, the trustee's failure to make that claim alone does not demonstrate that the trustee has waived his future right to terminal compensation from principal when the trust ends. *See also In Re Account of Reed,* 467 Pa. 371, 378, 357 A.2d 138 (1976); *In Re Coulter's Estate,* 379 Pa. 209, 108 A.2d 681 (1954). Certainly Arthur's failure to claim commissions at the time of prior income distributions cannot be construed to be a waiver of Arthur's future right to claim commissions from principal at the termination of the trusts when the principal was to be distributed.

We find no evidence of conduct by Arthur that would have led appellants to a justifiable belief that he, by his estate, would not claim entitlement to a terminal commission. The trial court did not err in so finding.

The second and final issue on appeal concerns the estate's right to be paid terminal commissions despite the estate's

failure to submit evidence of the services Arthur performed in addition to the evidence the trial court already had in the form of the final trust accounts themselves. Appellants argue that the estate had the burden of producing specific evidence of the precise services rendered by Arthur during his long tenure as trustee, and that in the absence of such proof, the estate should be awarded no terminal commissions. Appellants also point to the fact that the co-trustee, who was first appointed in 1980, testified that Continental Bank performed administrative duties relative to the trusts beginning in 1980, and Arthur did not render substantial services to the trusts after that time. Lastly, appellants argue that since Arthur was mainly interested in producing income for his own benefit as income beneficiary, any services he did render as trustee were of no value to the trusts and do not merit compensation.

Appellee counters that the final trust accounts themselves provide sufficient evidence of the services Arthur rendered, in that they reveal the number of years Arthur shouldered the responsibility of being a fiduciary for the three trusts, the investment activity in the trusts, the income distributions made and the nature and amount of assets held. Appellee further argues that no other more specific evidence of Arthur's services exists, in that Arthur is deceased and cannot testify, and the estate has no knowledge of any time records of the services Arthur provided to the trusts over the years.

■ As to this issue, our standard of review differs from that applicable to a review of the trial court's legal conclusion regarding waiver. In determining whether the trial court erred in fixing the amount of the trustee's compensation, we may reverse only if we find that the trial court has abused its discretion or committed palpable error. *Estate of Sonovick,* 373 Pa.Super. 396, 541 A.2d 374, 376 (1988).

■ In deciding this issue, we are confronted with two legal principles that at first glance appear to be in conflict, but which are actually easily reconciled. The first principle is that a trustee has a prima facie right to be paid a just and reasonable fee for his services and, specifically, to be paid a

termination fee. *See Ischy, supra; Lawson, supra.* The second principle is that a trustee has the burden of proving what services he rendered in order to establish that the amount he is claiming is just and reasonable compensation. A panel of this court has recently stated these principles as follows:

> A fiduciary is entitled to 'reasonable and just' compensation for the services he provides. Thus, the fiduciary's entitlement to compensation should be based upon actual services rendered and not upon some arbitrary formula.... [T]he trial court is empowered to determine the value of the fiduciary's services and award reasonable compensation. Logically, the court also has the authority to reduce to a "reasonable and just" level those fees and commissions claimed by the fiduciary and her counsel.... "It is fundamental that an attorney seeking compensation from an estate has the burden of establishing facts which show that he or she is entitled to such compensation." Likewise, a fiduciary bears the burden of proving the reasonableness of his or her commissions.

*Estate of Sonovick,* 373 Pa.Super. 396, 541 A.2d 374, 376 (1988) (citations omitted).

The question that arises from the interplay of these principles is whether, in a case where a trustee does not submit proof of the precise services he rendered in order to show that the compensation he has requested is just and reasonable, is it an abuse of discretion or error of law for the trial court nevertheless to award the trustee a reduced level of compensation based on the court's own independent review of the information concerning the history and nature of the trusts contained in the final trust accounts. We conclude, as did the trial court, that it is well within the trial court's discretion to make such an award.

A similar situation was presented in *Estate of Sonovick, supra.* There, as here, the executrix/trustee submitted a claim for compensation, but did not submit any evidence as to what work had been performed or as to how the requested amount of compensation was calculated. However, the trial

court did have before it the trust accounts. The trial court reviewed those accounts and awarded the executrix/trustee a substantially reduced commission based on that review. In affirming, the *Sonovick* panel stated:

> [W]e hold that upon review of the trust and estate accountings, the trial court could reasonably determine the appropriate amount of compensation to be paid to the appellant ... for [her] services.

*Id.* at 399, 541 A.2d at 376.

Thus, we conclude that although a trustee who seeks a certain level of compensation does have the burden of demonstrating that the amount requested is just and reasonable, if the trustee fails to come forward with specific records substantiating the amount requested, that alone does not mean that the trustee must be awarded *no* compensation at all. If, as in *Sonovick* and the instant case, the trial court has before it trust accounts that provide evidence of the size and complexity of the trust estate and of the transactions involving the trust's assets that took place during the trustee's tenure, then the court can fashion an award of just and reasonable compensation and we will not reverse that award, unless we find that it is based upon an abuse of discretion.

We find no such abuse here. The trial court did not simply accept the amounts requested by the estate, but conducted an independent review of the trust accounts and determined, based on the size and activity in the trusts and the long tenure of Arthur as trustee, that a reduced amount of compensation was due. As we have indicated above, the total amount claimed by the estate was approximately $36,000 and the amount awarded was $25,000, representing a reduction of almost $11,000 or approximately 30%.

We are not persuaded by appellants' argument that the trial court erred in awarding the estate any compensation because Arthur allegedly did not perform substantial services for the trusts after 1980 when the co-trustee was appointed. The argument completely ignores the undeniable fact that Arthur did render services as the *sole* trustee of the Samuel trust for

thirty five years, and as *sole* trustee of the Ada trust for sixteen years. Moreover, this record does not contain evidence indicating that Arthur performed *no* services for any of the three trusts after 1980, in that the only testimony offered was that of the co-trustee, who indicated that he and Arthur *did* have meetings and conversations regarding the trusts in the period from 1980 until 1989 when Arthur died.

We are equally unpersuaded by appellants' further argument that the estate is due no compensation because any services that Arthur did render were of no value to the trusts. First, we rely heavily on the judgment of the trial court, who independently reviewed the trust accounts and who determined that although the amount of commissions claimed by the estate was excessive, nonetheless Arthur's services as trustee over the long life of these trusts *did* have some compensable value. We add that there is no proof in this record of wrongdoing by Arthur in the course of his service as either sole or co-trustee. Moreover, we note that all of appellants' complaints regarding Arthur's management of the Samuel and Ada trusts up to 1980 were resolved by the Family Agreement, in which appellants recited that they had *no* legal objections to the accounts Arthur had filed as to those trusts in 1980, and in which they further released Arthur from any and all claims arising from Arthur's acts as sole trustee.

We find no error of law in the trial court's conclusion that Arthur did not waive his right to terminal commissions for his services to the three trusts, and we find no abuse of discretion in the trial court's award of a total of $25,000 in terminal commissions to Arthur's estate.

The orders of the trial court in each of the three trusts are affirmed.