J-A26039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ELAINE CASSALIA, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: CHARLES GANJAMIE | : | No. 666 EDA 2023 |

Appeal from the Order Entered December 2, 2022
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2018-X4438

| | | |
|---|---|---|
| IN RE: PETER T. CASSALIA, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: CHARLES GANJAMIE | : | No. 667 EDA 2023 |

Appeal from the Order Entered December 2, 2022
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2018-X4439

| | | |
|---|---|---|
| IN RE: PETER T. CASSALIA, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: CHARLES GANJAMIE | : | No. 668 EDA 2023 |

Appeal from the Order Entered December 2, 2022
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2018-X4440,
2018-X4441

J-A26039-23

| | | |
|---|---|---|
| IN RE: PETER T. CASSALIA, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: CHARLES GANJAMIE | : | No. 669 EDA 2023 |

Appeal from the Order Entered December 2, 2022
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2018-X4440,
2018-X4441

| | | |
|---|---|---|
| IN RE: PETER T. CASSALIA, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: CHARLES GANJAMIE | : | No. 670 EDA 2023 |

Appeal from the Order Entered December 2, 2022
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2018-X4442

| | | |
|---|---|---|
| IN RE: ELAINE CASSALIA, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: CHARLES GANJAMIE | : | No. 671 EDA 2023 |

Appeal from the Order Entered December 2, 2022
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2018-X4443

- 2 -

J-A26039-23

| IN RE: PETER T. CASSALIA, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|

APPEAL OF: CHARLES GANJAMIE      :      No. 672 EDA 2023

Appeal from the Order Entered December 2, 2022
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2019-X1899

BEFORE: DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED SEPTEMBER 11, 2024**

Appellant, Charles Ganjamie ("Trustee"), appeals from the orders entered in the Montgomery County Court of Common Pleas, which directed Trustee to take certain actions to conclude the administration and distribution of seven different trusts. We affirm.

The relevant facts of this appeal are as follows. Over a period of decades, Peter and Elaine Cassalia established seven trusts, which the Orphans' Court's opinions referred to as follows: **1)** Peter's 1993 Trust (2018-X4439); **2)** Peter's Disclaimer Trust (2018-X4440); **3)** Peter's Residuary Trust (2018-X4441); **4)** Peter's Irrevocable Life Insurance Trust ("ILIT") (2019-X1899); **5)** Peter's 2008 Family Trust (2018-X4442); **6)** Elaine's ILIT (2018-X4438); and **7)** Elaine's 2015 Revocable Trust (2018-X4443). The Cassalias named Trustee, their nephew, to serve as the trustee for each trust.

> Although none of the trusts created at a later date was named as a beneficiary of the earlier trusts, and although

- 3 -

the named beneficiaries of the various trusts were not identical, in 2015, Trustee determined to terminate certain trusts and transfer their assets in their entirety to other continuing trusts, as follows:

- All assets of Peter's 1993 Trust (2018-X4439) were transferred to Elaine's 2015 Trust on October 29, 2015 by Trustee, even though Elaine was not a beneficiary of Peter's 1993 Trust;

- All assets of Peter's Residuary Trust (2018-X4441) were transferred to Elaine's 2015 Trust on November 5, 2015, although Elaine was an income beneficiary of Peter's Residuary Trust with defined rights to distributions of principal, and not entitled to a lump sum distribution of all of the assets of Peter's Residuary Trust;

- All assets of Peter's ILIT (2019-X1899) were transferred to Elaine's ILIT (2018-X4438), on November 3, 2015. When these funds were transferred the remainder beneficiaries of Peter's ILIT were trusts for all five Cassalia daughters; by contrast, the remainder beneficiaries of Elaine's ILIT were four of the daughters individually, and a trust for only one daughter.

As a result of these transfers in October and November 2015, Peter's 1993 Trust, Peter's Residuary Trust, and Peter's ILIT all were terminated by Trustee in 2015 and Trustee retained no assets, no income, and no reserve. Trustee made no claim for commissions or attorneys' fees with respect to these three trusts in 2015 at the time of complete distribution of all assets of each of these three trusts. Nor did Trustee file Accounts at that time with respect to the three trusts that were terminated and fully distributed, nor does it appear that the Trustee sought a release from the beneficiaries at the time of these distributions.

In addition, Trustee filed an Account with respect to Peter's Disclaimer Trust (2018-X4440), which was never funded

and had no assets at any time.

\*     \*     \*

Peter died on October 4, 2010, a resident of Montgomery County, Pennsylvania. Elaine died on August 14, 2018, a resident of Montgomery County, Pennsylvania. Marianna F. Schenk … was appointed as Executrix of Elaine's Estate. [The trusts became] involved [in] protracted litigation. Executrix filed petitions to compel these accounts, and on May 24, 2019, Trustee filed First and Final Accounts and accompanying Petitions for Adjudication, with respect to each trust. Executrix filed objections that were joined by the five Cassalia Children…. Discovery ensued, as well as settlement discussions, and Petitions to Enforce Settlement were filed and subsequently withdrawn by Trustee, upon acknowledgement that agreement to the proposed settlement had not been obtained from all of the Cassalia Children.

Objectors took issue with the accounts as originally filed, because entries in the accounts incorrectly reflected attorneys' fees as paid from one trust that had in fact been paid from a different trust. Some of these fees had not yet been paid or were reflected as being paid on an inaccurate date. Upon Trustee's acknowledgement of certain erroneous and misleading entries in the accounts, relating to attorneys' fees for which neither the source, nor the payment was accurately disclosed, the [c]ourt directed Trustee to file amended accounts…. On June 2, 2021, Trustee filed Amended and Restated Accounts … to address the above-referenced discrepancies.

\*     \*     \*

On July 2, 2021, objections to the amended accounts were filed. On July 22, 2021, Trustee filed preliminary objections as to Ms. Schenk's standing as Executrix of Elaine's Estate to file objections, which the [c]ourt subsequently overruled.

Trustee initially believed that a settlement agreement had been reached. However, the proposed settlement was never agreed to by all of the beneficiaries. Nevertheless, Trustee, through counsel, prepared and filed a Petition to

- 5 -

>Enforce Settlement agreement, and subsequently withdrew this Petition.
>
>The original Accounts filed with respect to [Peter's 1993 Trust, Peter's Residuary Trust, and Peter's ILIT] made clear that Trustee had terminated those three trusts in 2015, without maintaining a reserve or claiming a commission. One other trust, the Disclaimer Trust, was never funded. [Trustee sought] to claim commissions and attorneys' fees with respect to the three trusts previously terminated and distributed in full in 2015, as well as commissions and attorneys' fees for [Elaine's ILIT, Peter's 2008 Family Trust, and Elaine's 2015 Trust].
>
>On November 30, 2021, Objectors withdrew essentially all of their objections as to the respective accounts except for those as to Trustee's commissions, attorneys' fees, and the reserves sought[.]

(Orphans' Court Adjudication and Opinion at 2018-X4438, X4442, and X4443, filed 12/2/22, at 3-7) (footnotes omitted).

In its orders entered December 2, 2022, the court found that Trustee had waived his claim to any commissions for the three trusts (Peter's 1993 Trust, Peter's Residuary Trust, and Peter's ILIT) that had their assets transferred into other, continuing trusts (Elaine's 2015 Trust and Elaine's ILIT). (**See id.** at 9-10). "Similarly, attorneys' fees subsequently incurred and for which no reserve has been maintained cannot be charged where the trusts were fully distributed years ago." (**Id.** at 10).

Regarding Peter's 2008 Family Trust, Elaine's ILIT, and Elaine's 2015 Trust, the court noted that Trustee had requested the following:

>Trustee seeks commissions totaling $165,337.63, in the following amounts from the following trusts:

- $29,192.14 (from Peter's 2008 Family Trust (2018-X4442));

- $18,331.15 (from Elaine's ILIT (2018-X4438), including therein, $4,156.95 attributable to Peter's ILIT (2019-X1899));

- $117,814.34 (from Elaine's 2015 Trust (2018-X4443), including therein, $54,127.80 attributable to Peter's Residuary Trust (2018-X4441)).

In his Amended and Restated Accounts, Trustee acknowledges the following sums have been paid to him as commissions:

- $29,192.14 (from Peter's 2008 Family Trust (2018-X4442));

- $18,331.15 (from Elaine's ILIT (2018-X4438), including $4,156.95 attributable to Peter's ILIT (2019-X1899));

- $12,000.00 (from Elaine's 2015 Trust (2018-X4443)).

Thus, the total of sums already paid to the Trustee from the three trusts adjudicated herein is $59,523.29.

(***Id.*** at 13-14).

Despite Trustee's requests, the court found that "Trustee did not present clear and persuasive evidence regarding the amount of work involved in serving as Trustee of these Trusts, and did not present any hourly records or other support" for the requested commissions. (***Id.*** at 14). Ultimately, the court approved commissions of $14,596.07 from Peter's 2008 Family Trust, $7,087.10 from Elaine's ILIT, and $31,389.63 from Elaine's 2015 Trust. (***See id.*** at 14-15). The court, however, surcharged Trustee and ordered him repay

a portion of the commissions he had already received from Peter's 2008 Family Trust and Elaine's ILIT. The court also authorized Trustee to retain reserves for each trust to pay any remaining expenses, costs, and certain counsel fees.

Regarding counsel fees, the court noted that Trustee had already paid the following amounts: $30,829.65 from Elaine's ILIT; $53,424.32 from Peter's 2008 Family Trust; and $50,507.84 from Elaine's 2015 Trust. (*Id.* at 12). Nevertheless, the court observed that "Trustee seeks legal fees for [additional] work for the benefit of four trusts that lack the assets to pay the claimed fees, as well as substantial legal fees for the litigation of the objections to the Accounts." (*Id.* at 15-16). In reviewing the record, the court found that "[t]he time expended on preparing Amended and Restated Accounts was wholly due to erroneous entries in the original Accounts introduced by counsel for the Trustee." (*Id.* at 16). "Moreover, Trustee and counsel compounded their errors by seeking to charge Trustee's commissions that had never been previously claimed for trusts that had terminated." (*Id.*) Consequently, the court ruled as follows:

> Accordingly, based upon a careful review of the record, [the c]ourt concludes that the following aggregate amounts shall be repaid to [Elaine's ILIT, Peter's 2008 Family Trust, and Elaine's 2015 Revocable Trust]: (1) a refund shall be made of $39,537.50 due to fees incurred for preparation of the original accounts for these three trusts; (2) a refund of $6,623.00 shall be made for time expended related to the fruitless petition to enforce a settlement; and (3) with respect to the other trusts terminated in 2015, where the attorneys' fees have been disallowed in those adjudications issued this date, to the extent any of those attorneys' fees were paid from these three … trusts, those sums shall also

be refunded to the respective trusts.

> In recognition of all of the foregoing, the amount to be refunded is $46,160.50. Additionally, this [c]ourt disallows the balance of the legal fees claimed that were not reported in the Accounts and that were incurred after the filing of the Accounts as excessive and unnecessary, with the exception of the reserves allowed from each trust below.

(*Id.* at 16-17). In summation, the court directed Trustee to "pay the amounts of surcharge and collect the amounts required to be refunded from attorneys' fees previously paid, and thereafter promptly conclude the administration and distribution of the trusts [and] pay the distributions herein awarded." (*Id.* at 19).

Trustee timely filed separate notices of appeal at each underlying docket number on December 30, 2022.[1] On January 3, 2023, the court ordered Trustee to file a Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal. Trustee timely filed Rule 1925(b) statements on January 24, 2023. On May 12, 2023, this Court consolidated the appeals *sua sponte*.

Trustee now raises three issues for this Court's review:

Did the Orphans' Court err as a matter of law when it held

---

[1] On April 13, 2023, this Court issued an order directing Trustee to show cause as to why the appeals should not be quashed. Specifically, this Court questioned whether the orders were appealable as final orders or, in the alternative, as appealable Orphans' Court orders. Trustee responded to this Court's order on April 25, 2023, arguing that the orders were appealable under Pa.R.A.P. 342(a)(1) (permitting appeal as of right from Orphans' Court order confirming account or authorizing or directing distribution from trust). Considering the procedural history of this appeal, we accept Trustee's reasoning and proceed to address the merits of the claims he presents on appeal.

that Trustee waived any commission for the three Peter Trusts even though waiver is an affirmative defense not raised by Objector and had not been proven from the facts presented at hearing?

Did the Orphans' Court err as a matter of law by awarding Trustee zero for attorneys' fees and cost from the three Peter Trusts incurred in filing four accounts and after a successful defense against surcharge?

Did the Orphans' Court err as a matter of law by overruling Trustee's preliminary objection to the Objector's lack of standing on the grounds the issue of standing had been waived?

(Trustee's Brief at 4).

The following principles apply to this Court's review of an Orphans' Court

decision:

[We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [O]rphans' [C]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Trust of John S. Middleton*, 313 A.3d 1079, 1088 (Pa.Super. 2024) (quoting

*In re Vincent J. Fumo Irrevocable Children's Trust ex rel. Fumo*, 104

A.3d 535, 539 (Pa.Super. 2014)).

The Orphans' Court's analysis of Trustee's first two issues overlaps, so

we address these issues together. In his first issue, Trustee contends that he

was entitled to commissions for the three trusts (Peter's 1993 Trust, Peter's

- 10 -

Residuary Trust, and Peter's ILIT) that had their assets transferred in 2015. Initially, Trustee contends that the Orphans' Court's waiver analysis is inapplicable under the circumstances of this case. Trustee observes that the court "repeatedly and mistakenly asserts the three trusts were 'terminated'" in 2015 upon transfer of their assets. (Trustee's Brief at 23). Trustee insists, however, that the three trusts were not terminated because "the funds were always available to transfer back into the three Peter's Trusts to cover any necessary costs or expenses, including the payment of Trustee's commissions." (*Id.* at 23-24). Trustee maintains that "[t]he passage of time, even decades, or failure to assert a claim for commissions has never been found to act as a waiver," and he "continued to be trustee over the funds even after they were transferred[.]" (*Id.* at 24). Based upon the foregoing, Trustee posits that "trust funds were always available to pay his commission from the trust into which they were transferred or for transfer back to pay his commission." (*Id.*)

Moreover, Trustee argues that Executrix "never objected to Trustee's commissions on the grounds of waiver." (*Id.* at 25). Trustee asserts that Executrix's objections to the amended and restated first and final account did not suggest that Executrix was attempting to plead waiver. Although the Orphans' Court reviewed the objections and interpreted Executrix's use of the term "forfeited" as raising waiver, Trustee complains that "this Objection clearly does not raise waiver as evident from a reading of the entire

Objection[.]" (*Id.* at 26) (quoting Executrix's Objections to Amended and Restated First and Final Account at No. 2018-X4443, filed 7/2/21, at ¶12). Trustee reasons that he "had to know the defenses that would be asserted against him so that he could prepare and present his response," but Executrix's objections gave him "no way of knowing … that waiver of his commission was a defense he had to confront." (*Id.* at 27).

In his second issue, Trustee cites the Pennsylvania Uniform Trusts Act for the proposition that a trustee is entitled to reimbursement for "[e]xpenses that were properly incurred in the administration of the trust[.]" (*Id.* at 28) (citing 20 Pa.C.S.A. § 7769(a)). Trustee maintains that these expenses include counsel fees, and the only time a trustee cannot be reimbursed for counsel fees is if the court determines that the trustee has breached their fiduciary duty. Based upon the foregoing, Trustee argues that he was entitled to reimbursement for all counsel fees associated with Peter's 1993 Trust, Peter's Residuary Trust, and Peter's ILIT. Trustee emphasizes that "the court found no breach of fiduciary duty on the part of Trustee," Trustee "did not cause any harm or loss to the trusts," and Trustee "did not act in bad faith." (*Id.* at 30) (some quotation marks omitted). Trustee also contends that his attorney presented evidence regarding the 743 billable hours of legal work related to these three trusts, which was reviewed and confirmed by Trustee's expert witness. Trustee concludes that the Orphans' Court committed errors of law by ruling that Trustee had waived commissions and refusing to award

counsel fees for the three trusts at issue. We disagree.

"Preliminarily, we note '[t]he primary duty of a trustee is the preservation of the assets of the trust and the safety of the trust principal.'" *In re Jerome Markowitz Trust*, 71 A.3d 289, 303 (Pa.Super. 2013) (quoting *In re Estate of Warden*, 2 A.3d 565, 573 (Pa.Super. 2010), *appeal denied*, 610 Pa. 580, 17 A.3d 1255 (2011)). "[W]here a valid agreement between a settlor and trustee fix the terms of the trustee's compensation, courts must ordinarily enforce the terms of the agreement without making an independent determination of whether the terms are reasonable."[2] *Trust Under Deed of Wallace F. Ott*, 271 A.3d 409, 417 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 283 A.3d 1245 (2022) (internal citation and quotation marks omitted).

"To be sure, the compensation claimed by a fiduciary must be based on services actually performed and not on some arbitrary formula." *In re Testamentary Trust Created Under Last Will and Testament of Ischy*, 490 Pa. 71, 81, 415 A.2d 37, 42 (1980). "[A] trustee has the burden of

---

[2] "Elaine's ILIT provides that an individual trustee 'shall be entitled to reasonable compensation.'" (Orphans' Court Adjudication and Opinion at 2018-X4438, X4442, and X4443 at 12). "Peter's 2008 Family Trust specifies that individual trustee compensation shall be 'fair and reasonable compensation.'" (*Id.*) "Elaine's 2015 Trust does not include a specific provision regarding compensation to an individual trustee, and as a result the provisions of 20 Pa.C.S.A. § 7768(a) apply, which provides that a trustee is entitled to compensation that is 'reasonable under all of the circumstances.'" (*Id.* at 12-13). Further, we reiterate that Trustee sought to be paid from Elaine's ILIT for commissions attributable to Peter's ILIT, and he sought to be paid from Elaine's 2015 Trust for commissions attributable to Peter's Residuary Trust. (*See id.* at 13).

- 13 -

proving what services he rendered in order to establish that the amount he is claiming is just and reasonable compensation." *In re Estate of Salus*, 617 A.2d 737, 743 (Pa.Super. 1992). "Logically, the court also has the authority to reduce to a 'reasonable and just' level those fees and commissions claimed by the fiduciary…." *Id.* (quoting *In re Estate of Sonovick*, 541 A.2d 374, 376 (Pa.Super. 1988)).

"While a trustee may waive, explicitly or by conduct, [his] right to compensation, … merely declining to seek compensation is not sufficient to defeat the right at a later time to seek it." *In re Raymond G. Perelman Charitable Remainder Unitrust*, 113 A.3d 296, 309 (Pa.Super. 2015), *appeal denied*, 635 Pa. 726, 131 A.3d 492 (2016) (internal citations omitted). "[W]hether a trustee has waived the right to compensation is a case-specific and fact-intensive inquiry…." *Id.* "In determining whether a waiver has occurred, we must ascertain whether the fiduciary has, either by words or deeds, created a basis for a reasonable belief that compensation will not be sought, such that a beneficiary may rely on such a belief." *Estate of Salus, supra* at 740. "Moreover, the conclusion of the trial court regarding whether a waiver has occurred is a conclusion of law as to which our review is plenary." *Id.* at 740-41.

"[W]hen reviewing the judgment of the Orphans' Court regarding the allowance or disallowance of attorneys' … fees, absent a clear error or an abuse of discretion, we will not interfere with the Orphans' Court

determination." *In re Estate of Rees*, 625 A.2d 1203, 1206 (Pa.Super. 1993).

> The amount of fees to be allowed to counsel, always a subject of delicacy if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill, and responsibility involved, as well as its knowledge of the rate of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error.

*In re Mastria's Estate*, 413 Pa. 278, 284, 196 A.2d 653, 656 (1964) (quoting *In re Taulane's Estate*, 408 Pa. 19, 22-23, 182 A.2d 765, 766 (1962)).

"A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for … expenses that were properly incurred in the administration of the trust[.]" 20 Pa.C.S.A. § 7769(a)(1). "[R]eimbursement under [Section 7769] may include attorney's fees and expenses incurred by the trustee in defending an action." *In re Sletten Family Trust*, 303 A.3d 795, 808 (Pa.Super. 2023) (quoting 20 Pa.C.S.A. § 7769, Uniform Law Comment). "It is well established that whenever there is an unsuccessful attempt by a beneficiary to surcharge a fiduciary the latter is entitled to an allowance out of the estate to pay for counsel fees and necessary expenditures in defending himself against the attack…." *In re Browarsky's Estate*, 437 Pa. 282, 285, 263 A.2d 365, 366 (1970) (quoting *In re Wormley's Estate*, 359 Pa. 295, 300-01, 59 A.2d 98, 100 (1948)). "[A]ttorneys … seeking compensation from an estate have the burden of establishing facts which show the reasonableness of their fees and entitlement to the compensation

claimed." ***Sletten Family Trust, supra*** at 808 (quoting ***Estate of Rees,***

***supra*** at 1206). In evaluating the reasonableness of legal fees, a court must

consider:

> The amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

***Id.*** (quoting ***In re LaRocca's Estate***, 431 Pa. 542, 546, 246 A.2d 337, 339

(1968)).

Instantly, the Orphans' Court addressed Trustee's arguments regarding

commissions and counsel fees as follows:

> Initially, Trustee's claim that [Executrix] did not assert "waiver" in [her] Objections completely ignores the fact that Trustee failed in the first instance to even put [Executrix] on notice of certain claims for commissions, fees, or reserves. Contrary to Trustee's characterization, the record reflects that [Executrix] timely asserted in objections filed to the Accounts filed with respect to the above-captioned Trusts, that Trustee "forfeited" any and all claims premised on payment from the terminated Trusts. Thus, Trustee's initial contention that [Executrix] did not properly assert waiver is meritless.
>
> \* \* \*
>
> Given the extensive evidence in the record demonstrating the magnitude to which legal counsel exacerbated the factual and legal conundrum Trustee faced in attempting to extract commissions and legal fees from the extinguished Trusts captioned above, the assets of which had long since

been distributed and exhausted, made worse by the confusing presentation of evidence regarding fees claimed, this [c]ourt reached a reasonable decision, firmly based upon the pleadings and the evidence presented to the [c]ourt, to deny the payment of commissions, fees, and reserves for the terminated Trusts captioned herein; and approve the payment of some but not all of the fees proposed to be charged by Trustee's counsel as to the three remaining Trusts.

(Supplemental Opinion at 2018-X4439, X4440, X4441, and X1899, filed 3/10/23, at 4-5) (record citation omitted). We accept this analysis.

Regarding Trustee's assertion that he was entitled to commissions for Peter's 1993 Trust, Peter's Residuary Trust, and Peter's ILIT, the court conducted a case-specific inquiry and determined that Trustee's actions with respect to these trusts created a basis for a reasonable belief that compensation would not be sought. *See Perelman Charitable Remainder Unitrust, supra*; *Estate of Salus, supra*. To the extent Trustee also argued that he had "no way of knowing" that he needed to combat a waiver claim, we agree with the Orphans' Court that the use of the word "forfeited" in Executrix's objections provided Trustee with adequate notice of the attacks he faced. (*See* Executrix's Objections to Amended and Restated First and Final Account at No. 2018-X4443 at ¶12). Moreover, upon reviewing the transcripts from the court's March 2022 hearings on the objections to the amended accounts, we disagree with any implication that Trustee could not prepare or

present an adequate response to Executrix's objections.[3]

Regarding the award of counsel fees, this is not a case where counsel is walking away empty-handed. Rather, the court resolved Trustee's request for the award of additional fees by considering the relevant factors from *LaRocca's Estate* and focusing on the character of the services rendered. Our study of the record supports the court's finding that counsel "exacerbated" the "conundrum" Trustee faced in his attempt to maximize the recovery of commissions and fees. Exceedingly mindful of the relevant standard of review, which acknowledges that the issue of counsel fees "is one peculiarly within the discretion of the court of first instance," we cannot say that the court committed plain error under the circumstances of this case. *See Mastria's Estate, supra*; *Estate of Rees, supra*. Therefore, Trustee is not entitled to relief on his first two issues.

In his third issue, Trustee contends that he properly challenged Executrix's standing to file objections to the amended accounts. Trustee baldly asserts that "[t]here are simply no grounds whatsoever on which it could be asserted [Executrix] had standing, as she had [no] greater interest than 'Joe Public.'" (Trustee's Brief at 33). Although the Orphans' Court concluded that Trustee had waived his challenge to Executrix's standing,

_____

[3] On March 2, 2022, the court conducted a hearing where Trustee and his attorney testified and presented exhibits. The hearing continued on March 10, 2022, where Trustee presented testimony from his expert and additional exhibits.

Trustee relies on Pennsylvania Orphans' Court Rule 2.8(a) for the proposition that an objection to standing cannot be waived. In addition to the court's waiver analysis, Trustee acknowledges the court's alternative theory that Executrix gained standing after the Cassilia children, who were the beneficiaries of the trusts, joined Executrix's objections. Trustee insists, however, that "[t]here is simply no authority for the position the lower court took, and certainly, no provision for joinder to Objections in the applicable Rules." (*Id.* at 35). Trustee concludes that the court committed an error of law by finding that he waived any preliminary objection to Executrix's lack of standing. We disagree.

"Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***In re Rosemary C. Ford Inter Vivos QTIP Trust***, 176 A.3d 992, 999 (Pa.Super. 2017) (quoting ***Rellick-Smith v. Rellick***, 147 A.3d 897, 901 (Pa.Super. 2016)).

> Generally, the doctrine of standing is an inquiry into whether the [potential party] has demonstrated aggrievement, by establishing a substantial, direct and immediate interest in the outcome of the litigation. [A] "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law[.] [A] "direct" interest requires a showing that the matter complained of caused harm to the party's interest. An interest is "immediate" if that "causal connection" is not remote or speculative.

***Shirley v. Pennsylvania Legislative Reference Bureau***, ___ Pa. ___, ___, 2024 WL 3450536, *11 (2024) (internal citations and some quotation marks omitted).

"The capacity to sue, which relates to standing, 'may be waived by a party if not objected to at the earliest possible opportunity.'" ***Hall v. Episcopal Long Term Care***, 54 A.3d 381, 399 (Pa.Super. 2012), *appeal denied*, 620 Pa. 715, 69 A.3d 243 (2013) (quoting ***In re Estate of Brown***, 30 A.3d 1200, 1204 (Pa.Super. 2011)).  Nevertheless, our Orphans' Court Rules provide the following:

> ### Rule 2.8.  Pleadings Allowed After Objections are Filed
>
> (a)    Answers to objections, preliminary objections to objections, and answers to preliminary objections are permitted, but **a party does not waive any rights by failing to file any of the foregoing**.  If an answer to objections is filed, no responsive pleading to the answer is permitted.
>
> (b)    Preliminary objections to objections shall be limited to lack of jurisdiction over the subject matter and lack of standing.

Pa.O.C. Rule 2.8(a), (b) (emphasis added).

Instantly, the Orphans' Court provided multiple reasons to support its rejection of Trustee's challenge to Executrix's standing:

> First, the assertion of a lack of standing fails … because the beneficiaries of each of the Trusts, the children of Elaine Cassalia, had joined in the Objections and clearly have standing to advance the objections.  Second, Trustee waived any objection to standing as the objection was not raised by the Trustee at the earliest possible moment.  Trustee failed to raise the issue of standing of the Executrix when Trustee Answered the Petition to Compel on January 25, 2019, and again failed to raise the issue of standing in response to the Objections filed by the Executrix to the original Accounts of the Trustee, when the Objections were filed on August 2, 2019.  Indeed, Trustee engaged in active litigation, discovery, and settlement discussions and failed to raise any

> question of standing for a period of two-and-a-half years after these three matters were commenced by Petition to Compel the filing of Accounts. Thus, the [c]ourt appropriately overruled Trustee's preliminary objections asserting that the Executrix lacked standing, based on his failure to raise this objection at the earliest juncture in the proceedings.
>
> Even assuming that Trustee had not waived his objection to standing, because of the more than two-and-a-half-year delay before he raised it, it fails substantively. The record before the [c]ourt demonstrates ample grounds supporting the Executrix's standing, namely, in her capacity as a representative of the Estate, a Trustee for the Elaine Cassalia Revocable Trust dated August 9, 2018.

(Supplemental Opinion at 2018-X4438, X4442, and X4443, filed 3/10/23, at 6-7).

Assuming without deciding that Trustee did not waive his objection by failing to raise it at the earliest possible opportunity, we agree with the court's conclusion that Executrix possessed standing. We emphasize that Elaine created her revocable trust in 2015, and she appointed Trustee at that time. During her lifetime, Elaine had the power to revoke the 2015 Revocable Trust in whole or part without Trustee's approval. (**See** Executrix's Petition for Citation to Show Cause Why an Account Should Not be Filed at 2018-X4443, filed 12/11/18, at Exhibit A). In 2018, Elaine revoked the 2015 trust and created a new trust. (**See id.** at ¶¶5-6). Elaine directed the manager of her 2015 Revocable Trust's assets to transfer the assets to a new account titled in the name of her 2018 revocable trust. (**Id.** at ¶7). Elaine also appointed Executrix as the trustee of her 2018 revocable trust. (**Id.** at Exhibit B).

- 21 -

Contrary to Trustee's assertion on appeal, Executrix possessed a greater interest in the outcome of these proceedings than "Joe Public." Trustee comingled the Cassalias' assets by transferring assets from some of Peter's trusts into Elaine's trusts. Thereafter, Elaine moved assets from her 2015 trust into her 2018 trust. Executrix, serving as both executrix of Elaine's estate and trustee of Elaine's 2018 trust, possessed a substantial, direct, and immediate interest in the outcome of any litigation related to these assets. *See Shirley, supra*. Accordingly, Trustee is not entitled to relief on his third issue, and we affirm the orders disposing of the trusts at issue.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  9/11/2024